[Nos. 43386, 43411. En Banc. October 2, 1975.]

THOMAS JENKINS, *Appellant*, v. THE STATE OF WASHINGTON *et al, Respondents.*
PAULA LOUISE SMAIL *et al, Appellants,* v. BURLINGTON NORTHERN, INC., *et al, Respondents.*

*Sullivan, Morrow & Longfelder*, by *Daniel F. Sullivan* and *Gregg L. Tinker* and *Rutherford, Kargianis & Austin*, by *John I. Weston, Jr.*, for appellants.

*Lee, Smart, Cook, Dunlap & Biehl, P.S., Inc.*, by *John F. Biehl, David L. Martin*, and *Nelson T. Lee*, for respondent King County.

HOROWITZ, J.—Plaintiffs appeal summary judgments of dismissal of four consolidated actions seeking relief against King County for negligent injury because of untimely compliance with the claim for damages statute RCW 36.45.030. We hold the statute violative of equal protection as later discussed.

On December 28, 1971, Russell P. Fehr, a minor, was seriously injured as the result of an automobile-train collision at the intersection of 259th Street and the Burlington Northern, Inc., railway tracks located in the City of Kent, King County, Washington. On April 5, 1972, Louise Kalaluhi, mother of Russell Fehr, filed a claim for damages with King County, alleging negligence on the part of the County for failure to properly sign, clear, and maintain the roadway, abutting property, and railway crossing. The claim was rejected by letter dated May 23, 1972.

On January 9, 1974, a complaint against King County, the State of Washington, Burlington Northern, Inc., and Smith Brothers Heating Service for personal injuries to Russell Fehr was filed by Paula Louise Smail, in her representative capacity as guardian ad litem for the child. On the same date Louise Kalaluhi filed a complaint for injury to the parent-child relationship. The two cases were subsequently consolidated for trial.

On January 18, 1972, a second automobile-train collision occurred at the same location, this time resulting in the death of Pamela Jenkins and serious injuries to her son, Isaac Jenkins. A claim for damages was filed with King County on May 5, 1972, by Thomas Jenkins, husband of Pamela and father of Isaac, also alleging negligence on the part of the County in failing to properly sign, clear, and

maintain the roadway, abutting property, and railway crossing where the collision occurred. This claim was also rejected by letter dated May 23, 1972.

On October 19, 1973, Thomas Jenkins, in his capacity as personal representative of the estate of Pamela Jenkins, filed a complaint for wrongful death against King County, the State of Washington, City of Kent, Burlington Northern, Inc., Allied Salvage, and two other John Does. He filed a second complaint for injury to the parent-child relationship in his own behalf on the same date. These two cases were also consolidated for trial.

King County moved for summary judgment in each of the four cases to dismiss the respective complaints against the County on the ground all four actions were not commenced within the time period provided for in RCW 36.45.030. At the time that statute read as follows:

> No action shall be maintained on any claim for damages until it has been presented to the board of county commissioners and sixty days have elapsed after such presentation, but *such action must be commenced within three months after the sixty days have elapsed.*

(Italics ours.) The four complaints not having been filed within the time period prescribed, the trial court granted the motions and entered summary judgments dismissing the four complaints against the County. Plaintiffs appeal.

Plaintiffs contend the trial court erred in dismissing their complaints because RCW 4.96, not RCW 36.45.030, governs the commencement of tort actions against counties. RCW 4.96.010 provides:

> All political subdivisions, municipal corporations, and quasi municipal corporations of the state, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their officers, agents or employees to the same extent as if they were a private person or corporation: *Provided,* That the filing within the time allowed by law of any claim required shall be a condition precedent to the maintaining of any action. The laws specifying the content for such claims shall be liberally

construed so that substantial compliance therewith will be deemed satisfactory.

Plaintiffs cite that statute as evidencing legislative intention to establish a uniform scheme of governmental tort liability. Plaintiffs accordingly contend RCW 4.96 impliedly repealed RCW 36.45.030 insofar as it applied to tort actions against counties, leaving the latter statute still applicable to other actions against counties.

We agree with the respondent, however, that RCW 36.45.030 clearly controls the commencement of actions against counties, including tort actions, by its own terms and by the terms of RCW 4.96.020, which provides in part:

(1) Chapter 35.31 RCW shall apply to claims against cities and towns, and chapter 36.45 RCW shall apply to claims against counties.

(2) The provisions of this subsection shall not apply to claims against cities and towns or counties but shall apply to claims against all other political subdivisions, municipal corporations, and quasi municipal corporations.

We also agree with respondent RCW 4.96 does not meet the requirements of repeal by implication. Repeals by implication are not favored. *Tardiff v. Shoreline School Dist.*, 68 Wn.2d 164, 411 P.2d 889 (1966). As stated in *State ex rel. Reed v. Spanaway Water Dist.*, 38 Wn.2d 393, 397, 229 P.2d 532 (1951):

The *general rule* of statutory interpretation respecting implied repeals, as previously stated, provides that, in the absence of specific repealing language, a prior act is not repealed by the enactment of a later act relating to the same matter. The *exception* to the general rule permits a repeal by implication if the later act:

1. *Covers the entire subject* matter of the earlier legislation;

2. Is *complete* within itself;

3. Is evidently intended to supersede the prior legislation on the subject; or

4. If the two acts are so clearly inconsistent with and repugnant to each other that they cannot by fair and reasonable construction be reconciled and both be given effect.

First, RCW 4.96, applying only to tort actions, does not cover the entire subject matter of RCW 36.45.030, which applies to all actions against counties. Second, in view of RCW 4.96.020(1) quoted above, RCW 4.96 was expressly not intended to repeal RCW 36.45.030. Third, RCW 4.96 and RCW 36.45.030 are not clearly inconsistent and repugnant to each other. They can fairly be construed to give effect to both; namely, RCW 36.45.030 applies to all actions against counties, including those sounding in tort, and RCW 4.96 applies to tort actions against all other political subdivisions, municipal corporations, and quasi municipal corporations, exclusive of cities and towns. RCW 4.96.020; RCW 35.31.

Plaintiffs also contend RCW 4.96 should be held to control over RCW 36.45.030 on the question of commencement of tort actions against counties because RCW 4.96 is a special statute applying only to claims against governmental entities sounding in tort, whereas RCW 36.45.030 is a general statute applying to all claims and actions against counties, and, as stated in *Mercer Island v. Walker*, 76 Wn.2d 607, 613, 458 P.2d 274 (1969):

> [W]here there is a conflict between a general and a special statute, covering the subject in a more definite and minute way, the specific statute will prevail.

However, respondent points out that RCW 36.45.030 can easily be read to be the more specific of the two statutes since it applies only to counties, whereas RCW 4.96 is a general statute applying to "[a]ll political subdivisions, municipal corporations, and quasi municipal corporations of the state . . ." RCW 4.96.010. Therefore, RCW 36.45.030 would control. *Mercer Island v. Walker, supra.*

Plaintiffs next contend that, if RCW 36.45.030 controls the commencement of tort actions against counties, the 3-month limitation on the commencement of actions provided for in that statute constitutes an invidious and arbitrary discrimination against victims of the tortious conduct of counties in violation of the guarantee of "equal protection

of the laws" contained in Const. art. 1, § 12 and U.S. Const. amend. 14. Plaintiffs contend this is so because victims of the tortious conduct of all other governmental entities in the state, including the State itself, have 3 years from the date of the occurrence to commence their actions under the general statute of limitations relating to torts (RCW 4.16.080 (2) ). RCW 4.92.110; RCW 4.96.020; RCW 35.31.

 For the reasons discussed below, plaintiffs' constitutional attack must be sustained. Const. art. 1, § 12 provides:

> No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.

U.S. Const. amend. 14 provides that no state may "deny to any person within its jurisdiction the equal protection of the laws." This principle of equal protection, guaranteed by both state and federal constitutions, "does not require that things different in fact be treated in law as though they were the same," but "it does require, in its concern for equality, that those who are similarly situated be similarly treated." Tussman & tenBroek, *The Equal Protection of the Laws*, 37 Calif. L. Rev. 341, 344 (1949); *see also*, Note, *Developments in the Law—Equal Protection of the Laws*, 82 Harv. L. Rev. 1065 (1969). As stated by the United States Supreme Court in *Reed v. Reed*, 404 U.S. 71, 75-76, 30 L. Ed. 2d 225, 92 S. Ct. 251 (1971):

> [T]his Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. . . . The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920).

Thus, when a statute provides that one class is to receive different treatment than another, these constitutional provisions require that:

(1) the legislation must apply alike to all persons within the designated class; and (2) reasonable ground must exist for making a distinction between those who fall within the class and those who do not.

*Belancsik v. Overlake Memorial Hosp.*, 80 Wn.2d 111, 115, 492 P.2d 219 (1971); *Rinaldi v. Yeager*, 384 U.S. 305, 16 L. Ed. 2d 577, 86 S. Ct. 1497 (1966).

█ In determining the constitutionality of the statute the court does not consider the statute in isolation but considers it rather against the background of other statutes which deal with the rights of persons similarly situated. It reaches its conclusions as to the constitutionality or unconstitutionality in light of the whole picture. *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 69, 10 L. Ed. 2d 202, 83 S. Ct. 1201 (1963). In *Gregg Dyeing Co. v. Query*, 286 U.S. 472, 479-80, 76 L. Ed. 1232, 52 S. Ct. 631, 84 A.L.R. 831 (1932), the court in upholding the constitutionality of a gasoline tax statute stated:

But appellants question the right to invoke other statutes to support the validity of the Act assailed. To stand the test of constitutionality, they say, the Act must be constitutional "within its four corners," that is, considered by itself. This argument is without merit. The question of constitutional validity is not to be determined by artificial standards. What is required is that state action, whether through one agency or another, or through one enactment or more than one, shall be consistent with the restrictions of the Federal Constitution.

In practical terms, then, RCW 36.45.030, in the context of other statutes relating to governmental tort liability, establishes two distinct levels of classification or discrimination. First, the provision treats counties differently than all other governmental entities, including the state, by providing for a significantly shorter period during which actions may be commenced against it. Second, the statute discriminates between victims of the tortious conduct of counties and vic-

tims of the tortious conduct of other governmental entities. In effect, victims of the tortious conduct of counties suffer the "burden" of having to commence their actions within 3 months of the expiration of the "presentation period," while victims of the tortious conduct of other governmental entities, including the state, enjoy the relative "privilege" of commencing their actions within 3 years of the date of the occurrence. In other words, RCW 36.45.030 provides a glaring exception to the otherwise uniform scheme of governmental tort liability in the state of Washington.

No rational permissible reason has been offered, nor have we been able to discern one, which would justify making such a distinction between counties and other governmental entities or between victims of the tortious conduct of counties and victims of the tortious conduct of other governmental entities. The only reasons offered by respondent to justify the classifications made relate to the reasonableness of limitations on the commencement of causes of action against governmental entities in general.

Respondent relies heavily on the majority view in *Cook v. State*, 83 Wn.2d 599, 521 P.2d 725 (1974) that Washington has made only a limited and conditional waiver of sovereign immunity. Thus, respondent argues, the state is free to impose whatever conditions it pleases with respect to actions against the state or any of its political subdivisions, municipal corporations or quasi municipal corporations. However, this argument rests on the erroneous assumption that because a state may validly choose either to maintain or to waive its sovereign immunity protection, any conditions, however arbitrary, that may be imposed in the process are constitutional. In reality, sovereign immunity has nothing to do with the ultimate classifications which conditions establish. Once sovereign immunity has been waived, even partially, any legislative classifications made with reference thereto will be constitutional only if they conform to the equal protection guarantees of the state and federal constitutions.

Accordingly, in the absence of a rational basis for provid-

ing otherwise, all persons similarly situated must be provided equal access to the courts for the redress of wrongs committed by governmental entities. As stated above, we have been unable to discern any rational basis for treating counties and victims of their tortious conduct any differently than other governmental entities and victims of their tortious conduct. Accordingly, we hold RCW 36.45.030 unconstitutional as violative of Const. art. 1, § 12 and U.S. Const. amend. 14 insofar as it purports to impose a different time limitation on the commencement of tort actions against counties than is imposed on the commencement of tort actions against other governmental entities in the state.[1]

This conclusion is supported by the rationale of a number of cases decided by the Illinois Supreme Court while testing the state governmental immunity statutory scheme against the requirements of a state constitutional "equal protection" provision similar to Const. art. 1, § 12.[2] In *Harvey v. Clyde Park Dist.*, 32 Ill. 2d 60, 203 N.E.2d 573 (1965), a minor child who was injured in a park department playground successfully challenged a governmental immunity statute which insulated the park district from liability. The court in *Harvey* stated:

> The determinative question under section 22 of article IV is whether the statutory classification is rational . . . . The circumstance that the alleged arbitrary discrimination results from a statutory pattern rather than

---

[1]Plaintiffs complied with the notice of claim provision in RCW 36.45.010 but not with the 3-month provision for commencing actions in RCW ·36.45.030. Plaintiffs do not contend the 3-month provision is inapplicable because the notice of claim provision is violative of equal protection. We do not reach that issue.

[2]The section of the Illinois Constitution applied provides:

"The general assembly shall not pass local or special laws in any of the following enumerated cases . . . Granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." Ill. Const. art .4, § 22.

Article 1, section 12 of the Washington Constitution provides:

"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."

from a single statute has not barred consideration of claims of violation of the equal protection clause of the 14th amendment to the Constitution of the United States . . . and we see no reason why that circumstance should bar the plaintiff's claim of discrimination in this case. . . .

. . .

So far as the present case is concerned, cities and villages, park districts, school districts and forest preserve districts, as well as the State itself, all maintain recreational facilities that are available for public use. If the child involved in the present case had been injured on a slide negligently maintained in a park operated by a city or village there is no legislative impediment to full recovery. If the child had been injured on a slide negligently maintained by a school district, or by the sovereign State, limited recovery is permitted. But if the child had been injured on a slide negligently maintained by a forest preserve district, or, as was actually the case, by a park district, the legislature has barred recovery. In this pattern there is no discernible relationship to the realities of life. We hold, therefore, that the statute relied upon by the defendant is arbitrary, and unconstitutionally discriminates against the plaintiff.

*Harvey v. Clyde Park Dist., supra* at 64-67.

Following *Harvey* the court struck down a statute granting immunity to counties from liability for personal injuries, property damage and death caused by the negligence of their agents. *Hutchings v. Kraject*, 34 Ill. 2d 379, 215 N.E.2d 274 (1966). The court stated at page 382: "The infirmity of this legislation lies in classifying governmental units as such, without regard to similarity of function."

In *Lorton v. Brown County Community Unit School Dist. 1*, 35 Ill. 2d 362, 366, 220 N.E.2d 161 (1966), the court, in striking down a notice of claim provision that applied to claims against school districts but not to other similar governmental entities, stated:

The courts of this state must be open to all those similarly situated upon the same conditions, and where procedures are provided which are applicable to some and not applicable to others under substantially like circumstances and there are no discernible logical reasons ap-

parent for the variations, they must fall as violative of section 22 of article IV of the Illinois constitution.

*See also Treece v. Shawnee Community Unit School Dist. 84*, 39 Ill. 2d 136, 233 N.E.2d 549 (1968); *Haymes v. Catholic Bishop*, 41 Ill. 2d 336, 243 N.E.2d 203 (1968); and *Cleary v. Catholic Diocese*, 57 Ill. 2d 384, 312 N.E.2d 635 (1974). *Cf. Republic Pictures Corp. v. Kappler*, 151 F.2d 543, 162 A.L.R. 228 (8th Cir. 1945); *Gillespie v. Pickens County*, 197 S.C. 217, 14 S.E.2d 900 (1941).

 Respondent finally contends Const. art. 1, § 12 specifically excludes municipal corporations from its proscriptions, and, therefore that provision is not applicable to the instant case. However, as pointed out in *Harvey v. Clyde Park Dist., supra* at 65:

> Nor is it significant that the quoted provision of section 22 of article IV has been held inapplicable to municipal corporations generally, and park districts in particular . . . For more is involved here than just the classification of governmental units. Those persons who are injured by the negligence of particular governmental units are also classified, and section 22 of article IV prohibits the granting of "special or exclusive" privileges to individuals. "This provision prevents the enlargement of the rights of one or more persons in discrimination against the rights of others."

In view of the conclusion reached, plaintiffs' other contentions need not be considered.

Reversed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.