53 P.3d 993 (2002)
Alirio MEDINA and Ernestina Fuentes, Petitioners,
v.
PUBLIC UTILITY DISTRICT NO. 1 OF BENTON COUNTY, Respondent.
No. 70978-5.
Supreme Court of Washington, En Banc.
Argued January 17, 2002.
Decided September 12, 2002.
*995 Charles Barr, Richland, Wiggins Law Office, Kenneth Masters, Bainbridge Is., Darrell Smart, Yakima, for Petitioners.
Karr, Tutle, Campbell, Craig Campbell, Mark Johnson, Seattle, for Respondent.
Bryan Harnetiaux, Debra Stephens, Spokane, amicus curiae on behalf of Wash. State Trial Lawyers Ass'n.
Michael Nicefaro, Seattle, amicus curiae on behalf of State of Wash.
*994 MADSEN, J.
In March, 1998, Alirio Medina and Ernestina Fuentes (Medina) filed a complaint seeking damages for Medina's personal injury claim against Public Utility District No. 1 of Benton County (County) and Fuentes' derivative claim for loss of consortium. The County moved for summary judgment, arguing that Medina failed to comply with the provisions of RCW 4.96.020(4) by filing four days before the statutory waiting period expired. Initially the Benton County Superior Court denied the motion but upon reconsideration issued an order granting the County summary judgment and dismissing the case. In an unpublished decision the Court of Appeals affirmed the dismissal of petitioners' suit. Medina v. Pub. Util. Dist., No. 1 of Benton County, noted at 105 Wash.App. 1019, 2001 WL 254425 (2001). Medina petitioned this court for its review. We hold that Medina's failure to wait 60 days before filing a claim against the County in superior court violates the provisions of RCW 4.96.020(4), and affirm the Court of Appeals.

FACTS
On January 9, 1995, Alirio Medina was injured when a car owned and operated by the County and driven by a county employee rear-ended the vehicle Medina was driving. In October 1995, Medina filed a claim with the County for property damage. On the claim form, settlement documents, and correspondence relating to the property damage claim, Medina stressed that the claim involved property damage only and should not be construed as encompassing any possible future personal injury claims. That claim was settled on October 30, 1995.
*996 On January 7, 1998, two days before the statute of limitations was to expire, Medina filed a second claim with the County for personal injury damages and loss of consortium.[1]
Under RCW 4.96.020(4), "[n]o action shall be commenced against any local governmental entity for damages arising out of tortious conduct until sixty days have elapsed after the claim has first been presented to and filed with the governing body thereof." The applicable limitations period is tolled during this period. Id. Medina's filing of the claim with the County thus commenced the 60-day period and tolled the statute of limitations for filing suit in superior court. The County denied the claim on January 13, 1998, and the County made no subsequent attempts to negotiate, to investigate, or to contact petitioners following the denial.
On March 5, 1998, four days before the 60-day waiting period was to expire, Medina filed the instant complaint in Benton County Superior Court.[2] The County was served with the summons and complaint on June 3, 1998. The County answered on July 13, 1998, and amended its answer on July 22, 1998, to include the affirmative defense of failure to comply with the waiting period specified in RCW 4.96.020(4). On December 28, 1998, the County filed a motion for summary judgment. The trial court initially denied the motion, but upon the County's motion for reconsideration granted summary judgment and dismissed the case. Medina appealed directly to this court, and this court transferred the case to the Court of Appeals.
In the Court of Appeals, Medina argued that (1) filing suit on March 5, 1998, complied with RCW 4.96.020(4); (2) the County waived noncompliance as an affirmative defense by raising it in an amended answer and by rejecting the claim prior to the end of the waiting period; (3) the County should be precluded from asserting a violation of the waiting period based on the theories of laches and equitable estoppel; and (4) RCW 4.96.020(4) is unconstitutional because it violates equal protection and due process. The Court of Appeals rejected these arguments and affirmed summary judgment in favor of the County. Only the issues of compliance with RCW 4.96.020(4) and the statute's constitutionality are raised in the petition for review.

ANALYSIS
A. Medina's 1995 claim
As a preliminary matter, we first consider whether, in light of RCW 4.96.010, Medina's 1995 claim for property damage satisfies the provisions of RCW 4.96.020(4) as to the 1998 claim for personal injury and loss of consortium. Medina argues that the property damage claim filed and settled in October, 1995, satisfied the requirements of RCW 4.96.020(4) for the personal injury claim filed on January 7, 1998. The County responds that the first and second claims cannot be consolidated for the purposes of satisfying the statute because, not only was the first claim settled, precluding a lawsuit, but the first was also explicitly designated as a claim for property damage only. The County cites as an example the fact that Medina hand wrote in capital letters "PROPERTY DAMAGE" on his claim form and wrote "property damage" above the signature line before signing. The County also points to Medina's settlement letter, which said, "I enclose Mr. Medina's claim for the property damage to his vehicle only, for the agreed amount of $1,896.86." Clerk's Papers (CP) at 61. Medina did not mention personal injury other than to specify that the claim he was filing was not for personal injury.
Medina argues that the personal injury claim is only redundant or an amendment to the first claim and that the first claim for property damage should be given a liberal reading so as to include personal injury claims. He contends that the settlement release *997 for the 1995 claim expressly reserved a cause of action for personal injuries:
The [Petitioner] clarifies that by using this property damage release he does not intend to release [the PUD] ... from any claim he may have for personal injuries and special and general damages, of any kind and that this instrument is intended to be a release only as to the physical damages to his vehicle.
CP at 68.
Relying on RCW 4.96.010 Medina urges that, applying a liberal construction to his claim, the court should find that his 1995 claim includes personal injury damages. RCW 4.96.010 provides:
(1).... The laws specifying the content for such claims shall be liberally construed so that substantial compliance therewith will be deemed satisfactory.
While we recognize that the statute sets forth a substantial compliance standard for the content of a claim, we must apply the Legislature's liberal construction directive in a manner that promotes the purpose of the claim filing statutes. It is generally accepted that one of the purposes of the claim filing provisions is to allow government entities time to investigate, evaluate, and settle claims. See, e.g., Daggs v. City of Seattle, 110 Wash.2d 49, 57, 750 P.2d 626 (1988); Williams v. State, 76 Wash.App. 237, 248, 885 P.2d 845 (1994). In this case Medina repeatedly specified that the 1995 claim was only for property damage to a vehicle. Thus, Medina's 1995 claim did not give the County the benefit of the waiting period to investigate the 1998 claim because no personal injury claims were made. The Legislature did not intend that RCW 4.96.010 be applied to mean that the content of a claim should be read so broadly as to negate the purpose of RCW 4.96.020(4), and we decline to do so.
We also agree with the County that treating the 1995 claim for property damage as encompassing the 1998 personal injury claims does not assist Medina because the 1995 claim was settled. Although Medina did preserve the right to file later claims, he did not preserve the original claim. That claim was disposed of and no longer exists. If Medina is correct that the 1995 claim did include the personal injury claim, then that claim has already been settled as well.
On this record, we hold that Medina's first and second claims are separate and each is subject to the provisions of RCW 4.96.020(4).
B. Medina's constitutional challenges
Next we consider Medina's argument that the 60-day waiting requirement of RCW 4.96.020(4) is unconstitutional. Medina says that this court has already held that once a claim has been denied there is no reason to require a tort claimant to wait to file suit. Hanford v. King County, 112 Wash. 659, 662-63, 192 P. 1013 (1920) (once the county denied the claim, the plaintiff did not need to wait the remainder of the sixty day period to file suit because the purpose of waiting period was satisfied). Relying on Hanford, Medina argues that there is no legitimate reason to prevent a plaintiff from filing suit if the County is not using the time to investigate or evaluate the claim. It is this lack of purpose, once a claim has already been denied, that Medina claims makes the statute unconstitutional as applied in this case.
The plaintiff in Hanford filed suit for injuries sustained when he was struck by an automobile owned by King County and driven "on its behalf." Id. at 660, 192 P. 1013. The statute at issue in Hanford provided, in part, that "[n]o action shall be maintained for any claim for damages until the same has been presented to the Board of County Commissioners and sixty days have elapsed after such presentation." Id. at 661, 192 P. 1013 (citing Laws of 1919, ch. 149 at 414).[3] The court presumed that the purpose of the statute was to allow the county time to investigate the accident and the extent of its liability. Id. The court then found that, because the county had already rejected Hanford's claim, there was no longer any purpose served by requiring Hanford to wait to file suit.
*998 Hanford does not advance Medina's constitutional claim. First, no constitutional claim was raised in Hanford. More importantly, other similar claim filing requirements such, as provided in chapter 4.96 RCW that operate as conditions precedent to filing suit, have withstood constitutional challenges. See, e.g., Daggs, 110 Wash.2d 49, 750 P.2d 626; Pirtle v. Spokane Pub. Sch. Dist. No. 81, 83 Wash.App. 304, 307-09, 921 P.2d 1084 (1996); Hintz v. Kitsap County, 92 Wash. App. 10, 960 P.2d 946 (1998).
The Washington Legislature waived sovereign immunity as to the political subdivisions of the State and its municipalities in 1967. See Laws of 1967, ch. 164, §§ 1, 4. Thus, the right to bring suit was created by statute and is not a fundamental right. See O'Donoghue v. State, 66 Wash.2d 787, 405 P.2d 258 (1965) (since the State, as sovereign, must give the right to sue, it follows that it can prescribe the limitations upon that right). The Washington State Constitution specifically reserves the right of the legislature to regulate law suits against governmental entities by providing that the legislature "shall direct by law, in what manner, and in what courts, suits may be brought against the state." Const. art. 2, § 26.
While the State has the power to regulate suits against the government, this court has held that legislative classifications must conform to the equal protection guaranties of the state and federal constitutions. See, e.g., Jenkins v. State, 85 Wash.2d 883, 890-91, 540 P.2d 1363 (1975). As this court has stated, "the Equal Protection Clause requires that persons similarly situated with respect to the legitimate purposes of the laws receive like treatment." In re Det. of Dydasco, 135 Wash.2d 943, 951, 959 P.2d 1111 (1998); Davis v. State, Dep't of Licensing, 137 Wash.2d 957, 972, 977 P.2d 554 (1999); Gossett v. Farmers Ins. Co. of Wash., 133 Wash.2d 954, 979, 948 P.2d 1264 (1997). Claim filing laws create two classes of tort victimsgovernmental and private. Daggs v. City of Seattle, 110 Wash.2d 49, 57, 750 P.2d 626 (1988); Hunter v. N. Mason High Sch. & Sch. Dist. No. 403, 85 Wash.2d 810, 539 P.2d 845 (1975); Hall v. Niemer, 97 Wash.2d 574, 582, 649 P.2d 98 (1982); Jenkins v. State, 85 Wash.2d 883, 540 P.2d 1363 (1975). Medina concedes that the classes created here are governmental tort victims and private tort victims and makes no argument as to any other classifications. He argues though that the enforcement of the 60-day waiting period once the claim was denied violates equal protection because it treats governmental tort victims and private tort victims differently without a reasonable relationship between the waiting period and the purpose of the statutes.
Statutes and ordinances that do not affect fundamental rights or create suspect classifications such as race or alienage are generally reviewed with minimal judicial scrutiny.[4]Daggs, 110 Wash.2d at 55, 750 P.2d 626 (citing Petersen v. State, 100 Wash.2d 421, 444, 671 P.2d 230 (1983)). Minimal scrutiny requires that the statute involved be rationally related to the achievement of a legitimate state interest. Daggs, 110 Wash.2d at 55, 750 P.2d 626, (citing Nielsen v. Wash. State Bar Ass'n, 90 Wash.2d 818, 820, 585 P.2d 1191 (1978)). Under minimal scrutiny, a classification will be upheld against an equal protection challenge if there is any conceivable set of facts that could provide a rational basis for the classification. Gossett, 133 Wash.2d at 979, 948 P.2d 1264 (citing Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)).
As was mentioned earlier, the state interest reflected in chapter 4.96 RCW is to encourage negotiation and settlement of claims against the government. Hall, 97 Wash.2d at 582, 649 P.2d 98. This court has already held that there is a rational relationship between the purpose of the statute, which is to encourage negotiation and settlement, and the provision enforcing a uniform waiting period for all claims. Daggs, 110 Wash.2d at 55, 750 P.2d 626. That holding is constitutionally sound, and we adhere to it.
*999 In addition, where claims filings statutes are concerned, this court has historically inquired whether a class was substantially burdened by the statute.[5] This court reasoned, in a case involving a claims filing statute, that statutes that substantially burden a right of some but not others are permissible only if reasonable, not arbitrary, and "`rest upon some ground of difference having a fair and substantial relation to the object of the legislation.'" Hunter, 85 Wash.2d at 814, 539 P.2d 845 (quoting F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920)). In Daggs this court held that governmental tort victims are not substantially burdened by waiting 60 days to file suit since the requirement imposes no "real impediment to relief." Daggs, 110 Wash.2d at 56, 750 P.2d 626. This is so, in part, because the statute provides for a tolling of the statute of limitations during the 60-day waiting period. See Coulter v. State, 93 Wash.2d 205, 608 P.2d 261 (1980).
In this case Medina had already been waiting for over three years and asserts no reason why waiting an additional 54 days to file suit (the time remaining of the 60-day period once the claim was denied) caused substantial burden. Medina argues that requiring compliance with the waiting period after denial of a claim is arbitrary but does not explain how it causes a burden, particularly in light of the tolling provisions of the statute. The burden is on Medina to show that the classification is purely arbitrary. State v. Thorne, 129 Wash.2d 736, 771, 921 P.2d 514 (1996). Because Medina has not established that the statute places a real impediment on governmental tort victims, he fails to demonstrate that the 60-day waiting period violates equal protection.
Medina's remaining constitutional challenge to RCW 4.96.020(4) is that it violates the due process protections of the Fourteenth Amendment because it is too confusing. The Fourteenth Amendment requires that people be given notice of that which is prohibited. State v. Reader's Digest Ass'n, 81 Wash.2d 259, 273, 501 P.2d 290 (1972). If individuals of common intelligence must guess at a statute's meaning and differ as to its application, it violates due process. Burien Bark Supply v. King County, 106 Wash.2d 868, 871, 725 P.2d 994 (1986) (citing Myrick v. Bd. of Pierce County Commrs, 102 Wash.2d 698, 677 P.2d 140, 102 Wash.2d 698, 687 P.2d 1152 (1984)). Medina has the burden of proving that RCW 4.96.020(4) is impermissibly vague. City of Seattle v. Shepherd, 93 Wash.2d 861, 865-66, 613 P.2d 1158 (1980).
Medina argues that the statute is confusing and vague because it does not define "toll" and "during" in its second sentence, concerned with tolling: "The applicable period of limitations within which an action must be commenced shall be tolled during the 60-day period." RCW 4.96.020(4).
The language of the statute, however, is clear and unambiguous. The relevant standard dictionary definition for "toll" is "to take away: make null: remove ." Webster's Third New International Dictionary 2405 (1986). A standard law dictionary provides the definition:
toll: ... To suspend or stop temporarily as the statute of limitations is tolled during the defendant's absent from the jurisdiction and during the plaintiff's minority.
BLACK'S LAW DICTIONARY 1488 (6th ed.1990).
The statute expressly states that a plaintiff's statute of limitations on a tort claim is tolled, or temporarily stopped, during the 60-day waiting period required under the statute. Medina has not demonstrated that persons of common intelligence would misunderstand or be confused about the requirements of this statute. We hold that RCW 4.96.020(4) does not violate due process protections.
C. Substantial Compliance
Next, we consider whether Medina's premature filing of his personal injury claims complied with the requirements of RCW 4.96.020(4). He does not dispute that the *1000 personal injury suit in superior court was filed prior to the end of the statutory 60-day waiting period.[6] He argues, though, that this court should apply a substantial compliance standard in analyzing whether Medina's early filing fulfills the requirements of RCW 4.96.020(4).
Although this court has not yet addressed the issue, generally the Court of Appeals has required strict compliance with all statutory notice claim provisions except as to the content of a claim. See, e.g., Sievers v. City of Mountlake Terrace, 97 Wash.App. 181, 983 P.2d 1127 (1999); Pirtle v. Spokane Pub. Sch. Dist. No. 81, 83 Wash.App. 304, 921 P.2d 1084 (1996); Levy v. State, 91 Wash.App. 934, 942, 957 P.2d 1272 (1998) (plaintiff failed to strictly comply with filing requirements of RCW 4.92.110 so dismissal was proper); Kleyer v. Harborview Med. Ctr., 76 Wash. App. 542, 547-49, 887 P.2d 468 (1995) (filing claim with university rather than state risk management office is not compliance and requires dismissal); Lewis v. City of Mercer Island, 63 Wash.App. 29, 817 P.2d 408 (1991) (filing requirements of RCW 4.96.010 are conditions precedent to commencing suit and must be strictly complied with); Andrews v. State, 65 Wash.App. 734, 738-39, 829 P.2d 250 (1992) (requirement of RCW 4.92.110 that claim be filed with state risk management office before commencement of suit is a mandatory condition precedent and will be strictly construed).
The County argues that, since the legislature specifically provided in RCW 4.96.010(1) that "[t]he laws specifying the content for such claims shall be liberally construed so that substantial compliance therewith will be deemed satisfactory," it can be inferred that no other provision is meant to be liberally construed. (Emphasis added.) The Court of Appeals in this case agreed.
Medina counters that substantial compliance is well established in Washington and should be applied when determining whether a party has met the statutory requirements of RCW 4.96.020(4). See, e.g., Crosby v. Spokane County, 137 Wash.2d 296, 971 P.2d 32 (1999) (in some circumstances jurisdictional requirements may be satisfied by substantial compliance); Union Bay Pres. Coalition v. Cosmos Dev. & Admin. Corp., 127 Wash.2d 614, 620, 902 P.2d 1247 (1995) (substantial compliance may apply in cases involving service of process); In re Saltis, 94 Wash.2d 889, 896, 621 P.2d 716 (1980) (applies substantial compliance to subject matter jurisdiction service requirements); Duschaine v. City of Everett, 5 Wash.2d 181, 105 P.2d 18 (1940) (literal compliance with legislative and charter provisions respecting the presentation of claims for tort against a municipality is not demanded; only substantial compliance is required); Davis v. City of Seattle, 37 Wash. 223, 79 P. 784 (1905) (purpose of claim filing statute was met so notice of claim found sufficient although not in strict compliance with statute); Durham v. City of Spokane, 27 Wash. 615, 68 P. 383 (1902) (sufficient compliance with notice claim statute where claim was presented to city clerk instead of city council).
However, where time requirements are concerned, this court has held that "failure to comply with a statutorily set time limitation cannot be considered substantial compliance" with the statute. City of Seattle v. Pub. Employment Relations Comm'n, 116 Wash.2d 923, 929, 809 P.2d 1377 (1991); Forseth v. City of Tacoma, 27 Wash.2d 284, 297, 178 P.2d 357 (1947) ("there can be no `substantial compliance' with the provision concerning the time within which a claim must be filed, except by filing it within that time"). The purpose of RCW 4.96.020(4) is to establish a period of time for government defendants to investigate claims and settle those claims where possible. Compliance with a waiting period can be achieved only through meeting the time requirements of the statute.
Medina argues, however, that because the purposes of the waiting period have been met, once the County denied his claim, substantial compliance should be found. We disagree. To hold as Medina suggests would call into question all statutory and court rule *1001 time requirements because often the underlying purpose of the statute or rule may be achieved without regard to time requirements. All time requirements necessarily involve a judgment by the legislature or a court as to the amount of time necessary to achieve the legislative or judicial purpose. Here, the legislature adopted a 60-day waiting period, and Medina simply failed to comply.
D. Hanford v. King County
In an argument raised for the first time in supplemental briefing, Medina urges this court to "simply follow Hanford." Supplemental Br. of Pet'rs at 10. Medina argues that the legislature is presumed to have been aware of Hanford's holding when it adopted RCW 4.96.020. Although not entirely clear, Medina seems to argue that the Legislature must have intended that the 60-day waiting requirement not apply once the county has denied a claim.
When construing a statute, this court first looks to the statutory language. In re Recall of Pearsall-Stipek, 141 Wash.2d 756, 774, 10 P.3d 1034 (2000). Nothing in the language of RCW 4.96.020(4) demonstrates that the Legislature intended to establish a variable limitation period, dependent upon the timing of the government's response to a plaintiff's claim.
Additionally, RCW 4.96.020(4) differs significantly from the 1919 law considered in Hanford. For example, that law required that a claim for damages against a county be presented to the county commissioners within 60 days after the time when the claim accrued. Laws of 1919, ch. 149 at 414. This court has held that a claim filing law such as that considered in Hanford violates equal protection. Hunter v. N. Mason High Sch. & Sch. Dist. No. 403, 85 Wash.2d 810, 539 P.2d 845 (1975) (statute requiring notice of claim within 120 days of injury found to violate equal protection); Jenkins v. State, 85 Wash.2d 883, 540 P.2d 1363 (1975) (statute requiring claimant to wait to bring suit until 60 days had elapsed after presenting claim to county commissioners but requiring suit be brought within three months after the lapse of 60-day waiting period violates equal protection). In light of Hunter and Jenkins, it is exceedingly doubtful that the legislature considered Hanford precedential when it enacted chapter 4.96 RCW, as the later cases dictate that the statute at issue in Hanford was unconstitutional.
Finally, unlike the law in effect in 1919, RCW 4.96.020(4) provides that "[t]he applicable period of limitations within which an action must be commenced shall be tolled during the sixty-day period." Even if we were to accept Medina's argument that the purposes of the statute were met once the County denied his claim, Medina still faces the problem that the purpose of the statutory tolling provision is also met when the County denied his claim. Medina waited until several weeks after the County's denial to file suit. Without the benefit of RCW 4.96.020's tolling, Medina filed suit well beyond the statute of limitations.

CONCLUSION
We hold that Medina's first and second claims are separate and each subject to the requirements of RCW 4.96.020(4). We hold that RCW 4.96.020(4) is constitutional. Finally, we hold that petitioners' second claim for personal injury damages failed to comply with the provisions of RCW 4.96.020(4). Accordingly, we affirm.
SMITH, JOHNSON, BRIDGE and OWENS, JJ., concur.
IRELAND, J. (dissenting).
Medina filed a negligence suit against Benton County 56 days after filing a claim with the County. Although RCW 4.96.020(4) requires waiting 60 days after making the claim to file suit, because Benton County had already investigated and rejected the claim, under the facts of this case, Medina should be found to have substantially complied. For this reason, I dissent.

Waiver of Sovereign Immunity
In 1967, Washington State waived the immunity of its political subdivisions, including municipalities. See Laws of 1967, ch. 164, §§ 1, 4. Since only the State, as sovereign, *1002 may waive this immunity, it also possesses the power to prescribe the limitations upon that right. See State ex rel. Pierce County. v. Superior Court, 86 Wash. 685, 688, 151 P. 108 (1915). The Washington State Constitution specifically reserves to the legislature the power to regulate the manner in which suits against the government may proceed. Const. art. 2, § 26. The statute at issue here, chapter 4.96 RCW, establishes the procedure in which municipal corporations are held liable for their tortious conduct and the tortious conduct of their officers. RCW 4.96.010.

Claims Statute
RCW 4.96.020(4) states:
No action shall be commenced against any local governmental entity for damages arising out of tortious conduct until sixty days have elapsed after the claim has first been presented to and filed with the governing body thereof. The applicable period of limitations within which an action must be commenced shall be tolled during the sixty-day period.

Statutory Purpose
One of the purposes of chapter 4.96 RCW is to ensure that sufficient notice is provided to government entities in order to allow prompt and thorough investigation of claims and to provide an opportunity for careful evaluation of the potential costs and benefits of litigation. Williams v. State, 76 Wash. App. 237, 248, 885 P.2d 845 (1994). As the majority notes, this section also encourages negotiation and facilitates the settlement of claims against the government. See majority at 998; Hall v. Niemer, 97 Wash.2d 574, 582, 649 P.2d 98 (1982). The statute does this by requiring persons to file a claim with the government agency whose allegedly tortious conduct gave rise to their injury and then to wait 60 days before commencing a lawsuit. RCW 4.96.020(4). The statute of limitations is tolled during this period. Id.

Substantial ComplianceRequirements
Ordinarily, the Court of Appeals requires strict compliance with statutory time provisions. Majority at 996. It is possible, however, to substantially comply with 4.96.020(4) where the facts of a particular case show the intent of the statute is met.
Defined as "actual compliance in respect to the substance essential to every reasonable objective of the statute," substantial compliance asks whether the statute has been followed sufficiently to carry out the intent for which it was adopted. In re Habeas Corpus of Santore, 28 Wash.App. 319, 327, 623 P.2d 702 (1981). What constitutes substantial compliance is determined on the facts for each particular case. Id.
The courts, on a case-by-case basis, can determine whether RCW 4.96.020(4) was substantially complied with if evidence shows that the government defendant (1) acted on the claim, (2) was not further investigating the matter, and (3) was not further negotiating settlement. A mere showing that the government agency acted on a claim does not satisfy the substantial compliance test since the agency can continue investigating, negotiating, or settling the matter after its initial action. Moreover, a substantial compliance argument can be defeated if the government defendant shows that it would be prejudiced by plaintiff's early filing because it was still proceeding on the claim. However, once the government ceases all action or intent to act on the issue after making a decision on the claim, the purpose of RCW 4.96.020(4) is satisfied and the test of substantial compliance can be met.
Medina substantially complied with RCW 4.96.020(4) when he filed suit against Benton County 4 days prior to the expiration of the 60-day waiting period. Within six days of receiving Medina's personal injury claim, the County rejected it. There is no evidence that suggests the County intended to further investigate, negotiate, or make any settlement offer. Medina filed suit on Thursday March 5, 1998, four days prior to the expiration of RCW 4.96.020(4). The last two days of the waiting period were a Saturday and Sunday, nonbusiness days for the County. Pet'r's. Br. at 4. The timing of filing in this case is important in determining whether Medina substantially complied with RCW 4.96.020(4). One can logically conclude that, *1003 since the County had already acted, was not pursing the claim any further, and had only one day left within which it could further proceed, it was not likely to initiate any new investigation or negotiations. Thus, Medina's early filing did not frustrate the purpose of RCW 4.96.020(4) and substantially complies with the statute.
This case differs significantly from those cited by the majority. Seattle v. Public Employment Relations Commission is inapposite to this case. Seattle v. Public Employment Relations Commission, 116 Wash.2d 923, 809 P.2d 1377 (1991). There, the court was confronted with the issue of whether a city could substantially comply with an administrative appellate procedure rule. The court stated that "failure to comply with a statutorily set time limitation cannot be considered substantial compliance." Id. at 929, 809 P.2d 1377. In that case, however, strict compliance was required because of the nature of RCW 34.05.518. That statute requires explicit action on the part of petitioners, mandating they file their claim within 30 days. RCW 34.05.518. Notice of appeal deadlines are jurisdictional and not generally susceptible to substantial compliance. See RAP 18.8; Schaefco, Inc. v. Columbia River Gorge Comm'n, 121 Wash.2d 366, 368, 849 P.2d 1225 (1993).
Conversely, RCW 4.96.020(4) prohibits the petitioner from filing suit until 60 days have elapsed in an effort to encourage settlements of claims out of court. Once the government defendant disposes of the matter and evidence shows that it will likely take no further action on the issue, neither is the government agency prejudiced nor is the intent of RCW 4.96.020(4) frustrated if the plaintiff files a lawsuit a few days prior to the expiration of the 60-day waiting period.
In Levy v. State, the court held that plaintiff's failure to verify her claim for damages was fatal to her case. Levy v. State, 91 Wash.App. 934, 957 P.2d 1272 (1998). The time provision of RCW 4.96.020(4) was not at issue. In Kleyer v. Harborview Medical Center and Lewis v. City of Mercer Island, the petitioners filed a lawsuit without even filing a claim with the government defendants first. Kleyer v. Harborview Med. Ctr., 76 Wash.App. 542, 887 P.2d 468 (1995); and Lewis v. City of Mercer Island, 63 Wash. App. 29, 817 P.2d 408 (1991). In these cases, the petitioners did not even attempt to strictly or substantially comply with statute by filing their claims with the government defendants before filing suit.
Sievers v. City of Mountlake Terrace is also distinguishable. In that case, the government defendant did not make any effort to investigate or settle the claim prior to the expiration of the 60-day waiting period. Sievers v. City of Mountlake Terrace, 97 Wash.App. 181, 983 P.2d 1127 (1999). Thus, when petitioner filed her suit on the 59th day, she negated the purpose of RCW 4.96.020(4) because the government still had time to act. Since the government had not acted, the only way to satisfy the intent of the statute was to wait for the entire 60 days to expire. In Medina's case, the statute was substantially complied with because the County had acted on the claim, satisfying the intent of the statute.
In Pirtle v. Spokane Public School District No. 81, on the same day the claim was filed, plaintiff's counsel issued an ultimatum to the defendant school district, threatening the district with a lawsuit unless it settled the matter within 16 days. Pirtle v. Spokane Pub. Sch. Dist. No. 81, 83 Wash.App. 304, 921 P.2d 1084 (1996). Plaintiff filed suit before the district had acted. The action of the plaintiff frustrated the purpose of RCW 4.96.020(4) because the district was permitted 60 days to act on the claim. Thus, in Pirtle plaintiff neither strictly nor substantially complied with the statute.
As the court stated in In re Saltis, it is unjust to escape liability on a mere technicality. In re Saltis, 94 Wash.2d 889, 896, 621 P.2d 716 (1980). "`[S]ubstantial compliance' with procedural rules is sufficient, because `delay and even the loss of lawsuits [should not be] occasioned by unnecessarily complex and vagrant procedural technicalities.'" Id. Substantial compliance is determined on the facts for each particular case. Santore, 28 Wash.App. at 327, 623 P.2d 702. In this *1004 case, Medina substantially complied with RCW 4.96.020(4).
CHAMBERS, J., concurs.
CHAMBERS, J. (dissenting).
I concur with Justice Ireland's thoughtful dissent, and I also respectfully dissent on constitutional grounds. The legislature clearly declared that governmental entities should be held just as accountable for their tortious conduct as private persons and corporations. RCW 4.96.010(1). We have previously held that nonclaim statutes that create two classes of tortfeasors, government and private, and discriminate in favor of governments are unconstitutional. We have recognized a single exception to this rule. The opportunity of governments to negotiate and settle claims provides a rational purpose justifying a short delay in filing a complaint. Once the government denies a claim, no rational basis remains for the discriminatory preferential treatment and therefore RCW 4.96.020 is unconstitutional as applied to the facts of this case.
The law of torts serves two basic functions: it seeks to prevent future harm through the deterring effect of potential liability and it provides a remedy for damages suffered. W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 4, at 20-26 (5th ed.1984). The legislature has waived sovereign immunity; thus, the law of torts applies to governments. While the State may decline to waive immunity at all, it may not choose to condition waiver upon arbitrary conditions. "Once sovereign immunity has been waived, even partially, any legislative classifications made with reference thereto will be constitutional only if they conform to the equal protection guarantees of the state and federal constitutions." Jenkins v. State, 85 Wash.2d 883, 890, 540 P.2d 1363 (1975). Statutes that discriminate between victims of governmental and nongovernmental tortfeasors are constitutional only if there is, at minimum, a "substantial rational[]" reason for the discrimination.[1]Hunter v. N. Mason High Sch. & Sch. Dist. No. 403, 85 Wash.2d 810, 815 n. 5, 818-19, 539 P.2d 845 (1975).[2]
In Hunter, we considered a nonclaim statute that denied a right of action to persons harmed by the State unless they provide the government with notice within 120 days of the injury. Hunter, 85 Wash.2d at 811, 539 P.2d 845. This procedural prerequisite to tort recovery has no counterpart in actions between private parties. Nonclaim statutes, then and now, create two classes of tortfeasors, governmental and nongovernmental. Hunter, 85 Wash.2d at 813, 539 P.2d 845. Statutory classifications which substantially burden these rights for some individuals, but not all, are impermissible under the equal protection clause of the fourteenth amendment unless they are "reasonable, not arbitrary, and ... rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920).
We have already examined the arguments "most often put forward as justification for the special demands nonclaim statutes place on persons with claims against the government and its subdivisions," including the size of governmental entities and their need to investigate claims and to budget. Hunter, 85 Wash.2d at 815, 539 P.2d 845. We rejected each argument, concluding that: "the only function the special treatment given governmental bodies seems to perform is the simple protection of the government from liability for its wrongdoing." Hunter, 85 Wash.2d at *1005 817-18, 539 P.2d 845.[3] We concluded that the special protection provided to alleged governmental wrongdoers violated the equal protection clause of the fourteenth amendment of the United States Constitution and the special privileges and immunities prohibition of the Washington State Constitution, article I section 12. Hunter, 85 Wash.2d at 819, 539 P.2d 845. "[T]he unjustifiable discriminations these statutes make preclude their enforcement, not just in some cases but in all." Hunter, 85 Wash.2d at 820, 539 P.2d 845.
In Hall v. Niemer, 97 Wash.2d 574, 649 P.2d 98 (1982) and Daggs v. City of Seattle, 110 Wash.2d 49, 750 P.2d 626 (1988), this court again confronted nonclaim statutes.[4] Elaborating on our previous holding, we held that claim filing laws would not be invalidated where they served the "important function of fostering inexpensive settlement of tort claims[, s]o long as the procedural burdens of filing claims with the government are reasonable." Daggs, 110 Wash.2d at 53, 750 P.2d 626; see also Hall, 97 Wash.2d at 581, 649 P.2d 98 (finding insubstantial and rational burdens on tortfeasors constitutional). Hall and Daggs did not create a new rule that nonclaim statutes discriminating between private and governmental wrongdoers were somehow now per se constitutional. Instead, an exception was carefully carved out of Hunter. Claim filing statutes must have a rational purpose for discriminating between governmental and nongovernmental tort victims in order to survive equal protection challenges. Daggs, 110 Wash.2d at 56, 750 P.2d 626; Hall, 97 Wash.2d at 581, 649 P.2d 98. Hunter held that discrimination between governmental and nongovernmental tortfeasors could not be justified by the size, need for investigation, or budgetary planning of the government. Hunter, 85 Wash.2d at 816-17, 539 P.2d 845. In Daggs we concluded that, where the statute of limitation was not affected, the short 60-day buffer period between filing a claim and suit is reasonably related to achieving negotiated settlements. Daggs, 110 Wash.2d at 57, 750 P.2d 626 (quoting Hall, 97 Wash.2d at 584 n. 4, 649 P.2d 98). In other words, a short 60-day waiting period is a fair and reasonable means to accomplish the limited and rational purpose of giving the government an opportunity to negotiate and settle claims. Read together, Hunter and Daggs stand for the proposition that the only rationale we have recognized for discriminating between governmental and private wrong doers is the opportunity to negotiate and settle claims, and then only if the burden on the claimant is a short delay in pursuing the claim. With this rationale in mind, I examine the facts of this case.
Medina wished to file his lawsuit within three years of injury, but was effectively barred from doing so by the complex and complicating application of RCW 4.96.020. He would not have been prohibited from filing suit against a private party. The district denied his claim, before the 60-day waiting period had ended, but after the three year statute of limitations had lapsed.[5] According to the majority, Medina was required by unyielding law to file his complaint on a single magic date; precisely 60 days after the notice was filed. A complex rule for computing the 60 days must be followed. CR 6(a). No margin of error, according to *1006 the majority, is permitted, even an error in favor of timely compliance.
The public utility district investigated and concluded that there was no merit to Medina's claim and rejected it. In essence the utility district closed all negotiations and efforts to settle. Put another way, the utility district invited Medina to bring suit, and Medina accepted the invitation. Now the district claims, and the majority accepts, that even though negotiation and settlement was no longer an issue, Medina was still required to wait the full 60 days. Since the only rational basis we have recognized for the discriminatory advantage given governments by the nonclaim statutes is to negotiate and settle (and no other basis is argued to us), no rational basis appears for the special treatment. We have already ruled that this special treatment violates the equal protection clause of the fourteenth amendment of the United States Constitution and the special privileges and immunities prohibition of article I, section 12 of the Washington State Constitution. Hunter, 85 Wash.2d at 818-19, 539 P.2d 845. While we have recognized exceptions to this principle, the exceptions should not be allowed to swallow the rule.
Not only does the majority fail to state what possible rational basis exists for strict application of a claim filing statute once the governmental tortfeasor denies the claim, the majority also implies that the basis for the statute is no longer relevant to our analysis. Majority at 997, 998-999. Although the 5-4 majority in Daggs applied a rational basis review of the statutes, minimum scrutiny has never meant a complete lack of scrutiny.
The majority incorrectly assumes that navigating a complex set of rules regarding statutes of limitation places no real impediment on tort victims. These rules that give a special benefit to governmental entities can ultimately prevent a plaintiff from having his day in court. Justice Utter once wrote:
Nonclaim statutes constitute a barrier to suit for a significant number of victims of governmental misfeasance. It is a rare plaintiff who happens to know of the short notice period he must comply with, or to consult a lawyer before his time to file has expired. Only where the injured person is educated or well advised enough to know in advance of his or her legal rights is compliance with the notice requirements realistically possible. By increasing the demands on the potential plaintiff, these statutes grossly magnify the unfair impact of the unequal distribution of legal counsel and knowledge between rich and poor.
Hunter, 85 Wash.2d at 813-14, 539 P.2d 845 (footnote omitted).
Where the government rejects a claim before the expiration of the special 60-day buffer granted governmental defendants for negotiation and settlement, there remains no basis whatsoever for upholding application of a statute that can bar citizens' access to our courts and prevent the full and fair resolution of grievances. Certainly, the state constitution vests the legislature with the power to direct the manner in which suits may be brought against the state. CONST. ART. II, § 26. However, the manner directed must not violate equal protection. In this case, RCW 4.96.020 is unconstitutional as applied.
Therefore, I respectfully dissent and would remand the case for trial.
SANDERS, J., concurs.
ALEXANDER, C.J. (concurring in dissent).
I concur in the dissent by Justice Chambers, but only to the extent that he asserts that RCW 4.96.020 is unconstitutional as applied to the facts of this case.
NOTES
[1] This claim will hereinafter be referred to as "personal injury" but encompasses both the personal injury" and loss of consortium claims.
[2] Petitioner argues that the claim was filed on March 6, 1998, but the complaint was filed on March 5, 1998. Clerk's Papers (CP) at 86. March 5, 1998, was a Thursday and March 9, 1998, the end of the statutory waiting period, was a Monday.
[3] Although this provision of the 1919 law in effect in Hanford is similar to chapter 4.96 RCW, other provisions of that law barred suit unless a claim was filed with the county within 60 days. As discussed infra, such laws have been struck down by this court as violating equal protection.
[4] Petitioner urges the court to apply a strict scrutiny standard of review but cites no authority for doing so.
[5] This "substantial burden" analysis is not part of the more recent equal protection analysis of this court.
[6] Medina has argued that the first and second claims are one and the same and as such satisfy RCW 4.96.020(4), but does not dispute that the second claim on its own was not filed in strict compliance with the statute.
[1] Depending on the exact nature of the discrimination, substantial or compelling governmental interest may be required. See Hunter v. N. Mason High Sch. & Sch. Dist. No. 403, 85 Wash.2d 810, 815 n. 5, 539 P.2d 845 (1975).
[2] I am aware that the Court of Appeals has previously considered this issue and rejected a similar equal protection challenge in Pirtle v. Spokane Pub. Sch. Dist. No. 81, 83 Wash.App. 304, 921 P.2d 1084 (1996). There, without significant analysis, the Court of Appeals found that the waiting period is rationally related to a legitimate state goal. Pirtle, 83 Wash.App. at 309, 921 P.2d 1084. This is true. However, here the Court of Appeals did not consider whether the application of the statute under such circumstances is rationally related to a legitimate state goal.
[3] Governmental bodies are not necessarily larger than private tortfeasors, nor are they necessarily more prone to liability. Hunter, 85 Wash.2d at 816, 539 P.2d 845. Additionally, claim notice requirements do not necessarily facilitate budget planning since smaller governmental entities will usually purchase insurance like any private individual or corporation, and larger ones will carry liability insurance as permitted by statute. Hunter, 85 Wash.2d at 817, 539 P.2d 845 (citing Lunday v. Vogelmann, 213 N.W.2d 904, 910 (Iowa 1973) (Reynoldson, J., dissenting)).
[4] The statute struck down in Hunter was not formally amended until 1993. See Laws of 1993, ch. 449, § 3. Hall v. Niemer, 97 Wash.2d 574, 649 P.2d 98 (1982) and Daggs v. City of Seattle, 110 Wash.2d 49, 750 P.2d 626 (1988) both considered the closely related statutory schemes governing claims against various political subdivisions of the State provided by chapters 36.45 and 35.31 RCW and a parallel city ordinance, former Seattle Municipal Code 5.24.005.
[5] The statute of limitations gave Medina until January 9, 1998 to file his lawsuit. He filed his claim with the county public utility district within the statute, on January 7, 1998. Filing with the county tolled the statute until March 9, 1998, a Monday. His claim was rejected on January 13, 1998, after the statute had run, but during the time it was tolled.